**MURPHY OIL CORPORATION,**
**Plaintiff,**

**v.**

**Walter J. W. HICKEL, Secretary of the Interior of the United States of America, Defendant.**

**No. ED 69 C–3.**

United States District Court
W. D. Arkansas,
El Dorado Division.

Nov. 4, 1969.

Supplemental Order Dec. 19, 1969.

William J. Wynne, Crumpler O'Connor Wynne & Mays, El Dorado, Ark., for plaintiff.

Bethel B. Larey, U. S. Atty., Fort Smith, Ark., for defendant.

## MEMORANDUM OPINION AND ORDER

ORREN HARRIS, District Judge.

This is an action by Murphy Oil Corporation, plaintiff, for a declaratory judgment interpreting certain regulations promulgated by the Secretary of Interior with respect to the calculation of crude and unfinished oil allocations under the Mandatory Oil Import Program as established by Presidential Proclamation 3279, March 10, 1959, as amended, and for the issuance of a mandatory injunction requiring the Secretary of the Interior to increase the crude and unfinished oil import allocations granted heretofore to the plaintiff.

█ Jurisdiction is established in that the issues involved present a federal question in a real and substantial dispute or controversy between the parties arising under the Constitution and the laws of the United States and certain regulations promulgated thereunder. 28 U.S.C.A. § 1331. Rank v. (Krug) United States, D.C., 142 F.Supp. 1, 62, 63, 64.

Jurisdiction is also asserted under the provisions of 28 U.S.C.A. §§ 1337, 2201, and 2202, and 5 U.S.C.A. §§ 701 and 702.

Venue is provided under the provisions of 28 U.S.C.A. § 1391(e). Pruess v. Udall, 123 U.S.App.D.C. 301, 359 F.2d 615.

From the pleadings, preliminary and pre-trial hearings, genuine issues of material facts exists which require a determination by the Court on the question of oil imports into the United States of America and its administration as authorized by Section 8 of the Trade Agreements Extension Act of 1958 (now Section 232(b) of the Trade Expansion Act of 1962, 19 U.S.C.A. § 1352(a)), and Presidential Proclamation No. 3279, dated March 10, 1959, as amended, together with regulations promulgated pursuant thereto.

During the course of a scheduled hearing, ore tenus testimony was presented, together with stipulation of the parties, Proclamations of the President of the United States, with applicable regulations, and exhibits were included in the record. Following the statements of counsel, the Court rendered its decisions from the bench. Subsequently the Court entered additional findings of fact and conclusions of law, which are incorporated herein as the decision and opinion of the Court.

█ Pursuant thereto, and from the entire record in the case, it is the opinion of the Court that an interpretive error was made in the manner in which the crude oil allocation of Murphy Oil Corporation was computed for the import period commencing January 1, 1968, and for the periods for which import licenses have since been issued. OI Reg. 1 Section 10(b), (c) (2).

The Court is of the further opinion that the Oil Import Appeals Board was in error in denying the plaintiff's appeal and petition for administrative relief. OI Reg. 1 Section 21(b) (1).

It is the further opinion of the Court that a declaratory judgment should be entered for the purposes of correcting the interpretive error and the error in denying the plaintiff's petition and ap-

peal for administrative relief, and that a mandatory injunction should be issued requiring the Secretary of Interior to increase the allocations of crude and unfinished oil imports to Murphy Oil Corporation consonant with its entitlement as provided herein.

It is, therefore, considered, ordered and adjudged that a declaration of the rights and entitlements of the parties and a mandatory judgment in accordance thereto be, and the same is hereby as follows:

1. That an interpretive error was made by the Secretary of Interior, his agents and employees, in the manner in which the crude oil allocation of Murphy Oil Corporation was computed for the import period commencing January 1, 1968, and continued for the periods for which import licenses have since been issued.

2. That the Oil Import Appeals Board was in error in denying the petition and appeal of Murphy Oil Corporation for administrative relief from the decision of the Secretary of Interior, his agents and employees, included in paragraph 1 hereof.

3. That Murphy Oil Corporation's oil import allocation as of January 1, 1968, should be computed for its Meraux Refinery on a percentage basis of refinery imputs as provided in paragraph (b) of Section 10, Amendment 6 to the Oil Import Regulation 1, (Revision 5), as amended, pursuant to Presidential Proclamation 3279, dated March 10, 1959, as amended, and that Murphy Oil Corporation's oil import allocation as of January 1, 1968, be computed for its Superior Refinery on the basis of 37.75% of the Superior Refinery's last allocation of imports of crude oil under the Voluntary Oil Import Program as provided in subparagraph (2), paragraph (c) of Section 10, Amendment 6 to Oil Import Regulation 1, (Revision 5), as amended, pursuant to Presidential Proclamation 3823, dated January 29, 1968, amending Presidential Proclamation 3279, dated March 10, 1959, as amended.

4. That the Secretary of Interior, his agents and employees, are hereby directed to increase the crude and unfinished oil import allocations granted to Murphy Oil Corporation in accordance with paragraph 3 of this order, and for the periods for which import licenses have since been issued.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This cause came on for trial and the court, having heard the evidence and considered the stipulation of the parties, finds the facts and states the conclusions of law as follows:

## FINDINGS OF FACT

1. That plaintiff, Murphy Oil Corporation, is a corporation chartered under the laws of the State of Delaware, qualified to do and doing business within the State of Arkansas, having its principal place of business and executive offices located in the City of El Dorado, Arkansas.

2. That Walter J. W. Hickel, Secretary of the Interior of the United States of America, having been nominated by the President with the advice and consent of the Senate, has been properly substituted as defendant herein.

3. That this Court has jurisdiction over the parties and the subject matter of the Complaint.

4. That venue of said cause of action is in this Court pursuant to the provisions of Title 28 U.S.C.A. § 1391(e).

5. That said Complaint states a cause of action which involves a real and substantial dispute or controversy between the parties which arises under the laws and Constitution of the United States and certain regulations promulgated thereunder.

6. That a genuine issue of material facts exists as evidenced by the pleadings and record herein.

7. That this is an action for a declaratory judgment interpreting certain regulations promulgated by the Sec-

retary of the Interior with respect to the calculation of crude and unfinished oil allocations under the Mandatory Oil Import Program as established by Presidential Proclamation 3279 of March 10, 1959, as amended, and for the issuance of a mandatory injunction requiring the Secretary of the Interior to increase the crude and unfinished oil import allocations granted plaintiff herein.

8. That the Voluntary Oil Import Program, which first established specific quotas for individual importers by name, was instituted for Districts I–IV (East of the Rockies) by the President's Special Committee to Investigate Crude Oil Imports (22 F.R. 6804). The report and the President's acceptance were dated July 29, 1957. The Voluntary Oil Import Program was made effective retroactive to July 1, 1957.

9. That there was no exemption for Canadian oil under the Voluntary Oil Import Program, and quotas were given to a number of refiners in Northern Minnesota, Michigan and Wisconsin which had historically utilized Canadian oil to supply their respective refinery input requirements.

10. That those refiners whose plant facilities are physically situate in Districts I–IV within the States of Minnesota, Michigan and Wisconsin are generically referred to as the "Northern Tier" group.

11. That the following refiners comprise the group referred to as the "Northern Tier", viz:

Great Northern Oil Company, St. Paul, Minnesota;

Northwestern Refining Co., St. Paul, Minnesota;

International Refineries, Wrenshall, Minnesota;

Superior Refinery, Superior, Wisconsin;

Bay Refining, Bay City, Michigan; and

Osceola Refining Company, West Branch, Michigan.

12. That Presidential Proclamation No. 3279, dated March 10, 1959, established a Mandatory Program for the importation of crude oil effective March 11, 1959.

13. That the statutory basis for the Oil Import Program is Section 8 of the Trade Agreements Extension Act of 1958 (now Section 232(b) of the Trade Expansion Act of 1962, 19 U.S.C. 1352a).

14. That plaintiff, Murphy Oil Corporation, is an independent integrated oil company engaged in producing, refining and marketing of petroleum and products derivative therefrom. It owns and operates two refineries in District I–IV (as defined in paragraph (d) of Section 22 of Oil Import Regulation 1 (Revision 5) as amended), which refineries are further described as follows:

*Superior Refinery,* located at Superior, Wisconsin (within the "Northern Tier") which was acquired by plaintiff in 1958 and the last allocation of this refinery under the Voluntary Oil Import Program was 4,300 B/D based upon its importing history; and

*Meraux Refinery,* located at New Orleans, Louisiana, which was acquired by plaintiff in 1961 and the last allocation of this refinery under the Voluntary Oil Import Program was 3,500 B/D based upon its importing history.

15. That Murphy Oil Corporation's import allocation was first calculated on the basis of a percentage of its collective refinery inputs for both the Meraux and Superior refineries ("input basis") rather than on the basis of its last allocation under the Voluntary Oil Import Program ("historical basis") for the import period January 1, 1967, through December 31, 1967.

16. That Murphy Oil Corporation's refinery located at Superior, Wisconsin, is geographically isolated from domestic sources of crude oil supply. It is therefore dependent upon Canadian crude oil in order to provide and maintain an ade-

quate feedstock for its Northern Tier refinery located at Superior, Wisconsin, in its efforts to compete with other Northern Tier refiners located within such restrictive geographical area.

17. That Canadian crude oil imported by overland means, while presently exempt from import restrictions pursuant to clause 4 of paragraph (a) of Section 1 of Proclamation 3279, as amended, is excluded from the definition of "refinery inputs" under subparagraph 2 of paragraph (k) of Section 21 of Oil Import Regulation 1, Revision 5, as amended.

18. That during the importing period October 1, 1966, through September 30, 1967, Murphy had the following respective inputs of domestic and exempt overland crude at its two refineries, i. e.:

Domestic inputs:

| | |
|---|---:|
| Superior Refinery. (crude) | 4,295 |
| Meraux Refinery (crude) | 28,624 |
| Meraux Refinery (Iso-Butane) | 577 |
| | 33,496 BPCD |

Overland Exempt (Canadian) Imports:

| | |
|---|---:|
| Superior Refinery (crude) | 15,282 |
| Superior Refinery (Iso-Butane) | 306. |
| | 15,588 BPCD |

19. That Murphy Oil Corporation's allocation of 4,174 B/D for the first 182 days of the allocation period comprising calendar 1968 was calculated on a percentage of Murphy's collective refinery inputs, exclusive of exempt overland crude.

20. That proclamation 3823 dated January 29, 1968 (33 F.R. 1171), further modified and amended Proclamation 3279 dated March 10, 1959, so as to provide, inter alia, that effective with respect to the allocation period beginning January 1, 1968, subparagraph (1) of paragraph (b) of Section 3 of Proclamation 3279, as amended, was amended to read as follows:

"With respect to the allocation of imports of crude oil and unfinished oils into District I–IV and into District V such regulations shall provide, to the extent possible, for a fair and equitable distribution among persons having refinery capacity in these districts in relation to refinery inputs (excluding inputs of crude oil or unfinished oils imported pursuant to clause (4) of paragraph (a) of section 1). The Secretary may by regulation also provide for the making of allocations of imports of crude oil and unfinished oils into Districts I–IV and into District V to persons having petrochemical plants in these districts in relation to the outputs of such plants or in relation to inputs to such plants (excluding inputs of crude oil or unfinished oils imported pursuant to clause (4) of paragraph (a) of section 1). Provision may be made in the regulations for the making of such allocations on the basis of graduated scales. Notwithstanding the levels prescribed in section 2 of this proclamation, the Secretary may also by regulation make such provisions as he deems consonant with the objectives of this proclamation for the making of allocations of imports of crude oil and unfinished oils into Districts I–IV and into District V to persons who manufacture from crude oil and unfinished oils (other than crude oil or unfinished oils imported pursuant to clause (4) of paragraph (a) of Section 1) and who export finished prod-

ucts and petrochemicals, subject to such designations as the Secretary may make. Provision shall be made in the regulations for the gradual reduction of historical allocations made on the basis of the last allocations of imports of crude oil under the Voluntary Oil Import Program: *Provided,* That provision shall be made for a more rapid reduction of historical allocations based on allocations made under the Voluntary Oil Import Program which reflected imports of crude oil in the category now covered by clause (4) of paragraph (a) of section 1: *Provided further,* That the regulations shall provide that no further reduction shall be made in a historical allocation of the class mentioned in the preceding proviso if the reduction provided for the next allocation period would result in a reduced historical allocation which is smaller than an allocation for the same period would be if computed (for the purposes of comparison only) on the basis of a total of refinery inputs (of the holder of the historical allocation) which includes inputs of crude oil and unfinished oils imported pursuant to clause (4) of paragraph (a) of section 1."

21. That implementing regulations therefor were promulgated by defendant by Amendment 6 to Oil Import Regulation 1, Revision 5, as amended, which regulations were first released publicly by news announcement of the Department of Interior on February 14, 1968, as subsequently published within the Federal Register under dateline of February 16, 1968 (33 F.R. 3061) which amended, inter alia, subparagraph (2) of Section 10 of Oil Import Regulation 1, Revision 5, as amended, to provide:

"If an applicant imported crude oil pursuant to an allocation under the Voluntary Oil Import Program which reflected imports of crude oil that would now be exempt from restrictions pursuant to clause (4) of paragraph (a) of section 1 of Proclamation 3279, as amended, and if an allocation computed under paragraph (b) of this section would be less than 33.25 percent of the applicant's last allocation of imports of crude oil under that program expressed in average barrels daily and multiplied by 182, the applicant shall receive an allocation under this section equal to 33.25 percent of his last allocation of imports of crude oil under that program expressed in average barrels daily and multiplied by 182. *Provided, however,* That if the allocation computed on this basis will result in a reduced historical allocation which is smaller than an allocation for this period would be if computed (for the purposes of comparison only) on the basis of a total of inputs to the applicant's refinery which includes inputs of crude oil and unfinished oils imported pursuant to clause (4) of paragraph (a) of section 1 of Proclamation 3279, as amended, the applicant shall nevertheless receive an allocation under this section equal to 37.75 percent of his last allocation of imports of crude oil under the Voluntary Oil Import Program expressed in average barrels daily and multiplied by 182."

22. That Murphy Oil Corporation promptly prepared and filed a Petition on February 23, 1968, with the Oil Import Appeals Board under subparagraph (1) of paragraph (b) of Section 21, as revised, seeking a modification of the allocation of 4,174 B/D for such importing period which had been calculated on the basis of Murphy's collective refinery inputs for the year ending September 30, 1967, in accordance with the schedule prescribed in subparagraph (b) of Section 10 of Amendment 6 to Oil Import Regulation 1, as amended. In such Petition Murphy contended that an administrative error had been made in the calculation of such allocation and requested that it be increased from 4,174 B/D to 5,482 B/D on the grounds that the allocation for the Superior Refinery should have been calculated on the basis of 37.75% of such refinery's last allocation of 4,300 B/D under the Voluntary

818

Oil Import Program on the basis of Proclamation 3823 and the implementing regulations therefor which had the effect of establishing an import floor for Northern Tier refiners below which their historical allocations would not further recede.

23. That a hearing on such Petition was subsequently scheduled and held before the Oil Import Appeals Board on May 2, 1968, but no decision was made thereon until December 11, 1968, on which date the Appeals Board denied such appeal on the grounds that no error had been made in the calculation of Murphy's allocation nor was any hardship found to exist, notwithstanding the Board, in its decision, admitted that the regulations contain no explicit prohibition against the dual basis of calculation of a refiner's allocation.

24. That the application of the aforementioned provisions of Proclamation 3823 and the regulations implemental thereto only to those Northern Tier refiners whose allocations are presently computed on a "historical" basis would be arbitrary, confiscatory and discriminatory and contrary to the statement of intent that such regulatory provision was intended to prevent dislocation of required feedstocks, and deny to Murphy equal protection under the laws in violation of the Fifth Amendment to the Constitution of the United States.

25. That Murphy Oil Corporation's allocation for the current importing period, viz., January 1 to December 31, 1969, was made on the basis of a percentage of its refinery inputs for the year ending September 30, 1968, computed in accordance with the schedule contained within subparagraph (b) of Section 10 of Oil Import Regulation 1, Revision 5, as amended.

26. That Murphy Oil Corporation's oil import allocation, since January 1, 1968 (the effective date of Proclamation 3823) should be computed for the Meraux Refinery on the percentage basis of refinery inputs set forth in subparagraph (b) of Section 10 of Amendment

6 to Oil Import Regulation 1, Revision 5, as amended, and computed for the Superior Refinery on the basis of 37.75% of the Superior Refinery's last allocation of imports of crude oil under the Voluntary Oil Import Program, under the terms of Proclamation 3823 and subparagraph (c) (2) of Section 10 of said Oil Import Regulation implemental thereto.

27. That Proclamation 3279, as amended, requires the defendant to administer the Oil Import Program and to provide for a fair and equitable distribution of import quotas to and among those persons eligible therefor.

28. Proclamation 3823 and Amendment 6 to Oil Import Regulation 1, Revision 5, as amended, had the consequential effect of establishing an import floor for all Northern Tier refiners (including Murphy) below which their historical allocations would not further recede by specifically providing an alternative basis for calculating the same.

29. That an interpretative error was made in the manner in which the allocation of Murphy was computed for the import period commencing January 1, 1968, and for the periods for which import licenses have since been issued.

30. That the Oil Import Appeals Board was in error in denying Murphy's appeal and petition for administrative relief.

CONCLUSIONS OF LAW

1. That an interpretative error was made in the manner in which the crude oil allocation of Murphy Oil Corporation was computed for the import period commencing January 1, 1968, and for the periods for which import licenses have since been issued.

2. That the Oil Import Appeals Board was in error in denying Murphy's appeal and petition for administrative relief.

3. That Murphy Oil Corporation's oil import allocation, since January 1, 1968, should be computed for the Meraux

Refinery on the percentage basis of refinery inputs set forth in subparagraph (b) of Section 10 of Amendment 6 to Oil Import Regulation 1, (Revision 5), as amended, and computed for Superior Refinery on the basis of 37.75% of the Superior Refinery's last allocation of imports of crude oil under the Voluntary Oil Import Program.

4. That Presidential Proclamation 3823 and the Amendment 6 to Oil Import Regulation 1, Revision 5, as amended, established an import floor for all Northern Tier refiners below which their historical allocations would not further recede.

5. The facts giving rise to the case at bar neither subvert the sliding scale system of calculating allocations as provided in subparagraph (b) of Section 10 of Oil Import Regulation 1 (Revision 5), as amended, nor violate the eligibility requirements enunciated in subparagraph (g) of Section 4 of said Oil Import Regulation 1.

6. That a declaratory judgment should be entered for purposes of correcting such interpretive error and a mandatory injunction issued requiring the Secretary of the Interior to increase the crude and unfinished oil import allocations granted to Murphy Oil Corporation consonant with the prayers as in its Complaint contained.

It is so ordered and judgment shall be entered accordingly.

## SUPPLEMENTAL ORDER

On this 19th day of December, 1969, comes on for consideration the motion of the defendant, Secretary of the Interior of the United States of America, to set aside a judgment entered heretofore on November 4, 1969, and for judgment to be entered for the defendant in accordance with the defendant's motion for a directed verdict made orally at the conclusion of the trial.

The bases of the defendant's motion are the same and constitute the grounds of those severally presented to the Court prior to and during the trial of the case which have heretofore been briefed. More particularly, the defendant insists in its motion notwithstanding the verdict, that the findings of fact and judgment of the Court are contrary to the weight and preponderance of the evidence; that they are not supported by substantial evidence; the conclusions of law entered herein are not supported by the findings of fact; and that the decision of the Secretary of the Interior should be sustained as a matter of law.

The defendant specifically renews its several motions and objections timely made to the Court before and during the trial. In support of its contention the defendant submits a brief in the form of a letter filed November 12, 1969.

The plaintiff has submitted a response and brief in opposition to the defendant's motion for a directed verdict, for a judgment notwithstanding the verdict, and in the alternative for a new trial, that the motion be denied and request that the order of the Court entered under date of November 4, 1969, be affirmed.

This cause of action having been regularly scheduled was tried to the Court on October 14, 1969. At the conclusion of the hearing the Court orally announced its decision in a statement included in the record. Supplemental thereto, the Court filed its findings of fact and conclusions of law, together with a Memorandum Opinion and Order in the nature of a declaratory judgment for the plaintiff. The Court is of the opinion that the decision and findings and conclusions on which the order of the Court was based, was and is correct and should be affirmed.

It is, therefore, considered, ordered and adjudged that the order of the Court entered on November 4, 1969, is hereby affirmed and the motion of the defendant for a directed verdict, for a judgment notwithstanding the verdict, and in the alternative for a new trial, be and the same is hereby denied and dismissed.